James C. Shah (SBN 260435)
Kolin C. Tang (SBN 279834)
MILLER SHAH LLP
19712 MacArthur Blvd., Suite 222
Irvine, CA 92612
Telephone: (866) 545-5505
Facsimile: (866) 300-7367
Email: jcshah@millershah.com
       kctang@millershah.com

[Additional Counsel on Signature Page]

*Attorneys for Plaintiff Kimberly Hudson*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| KIMBERLY HUDSON, individually, and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>v.<br><br>IDENTITY INTELLIGENCE GROUP, LLC d/b/a IDIQ,<br><br>　　　　Defendant. | **CLASS ACTION**<br><br>Case No: 5:22-cv-00884-DMG-KK<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

# FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff, Kimberly Hudson, on behalf of herself and all others similarly situated, and for her First Amended Class Action Complaint against Defendant Identity Intelligence Group, LLC d/b/a IDIQ,[1] states:

## NATURE OF THE CASE

1. Plaintiff Kimberly Hudson ("Hudson" or "Plaintiff") brings this case to protect the privacy rights of herself and a class of similarly situated people who were called on their phones by Defendant Identity Intelligence Group, LLC d/b/a IDIQ ("IDIQ" or "Defendant"). IDIQ called Hudson and the putative class members after they had registered their phone numbers on the National Do Not Call Registry.

2. In the early 1990s, Congress enacted the Telephone Consumer Protection Act ("TCPA") to protect consumers' privacy rights, namely, the right to be left alone from unwanted telemarketing calls. A leading sponsor of the TCPA described unwanted telemarketing calls as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

3. The TCPA affords special protections for people who registered their phone numbers on the National Do Not Call Registry. Specifically, the TCPA provides that each person who receives more than one call on their phone after being registered on the National Do Not Call Registry is entitled to recover a penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

4. From January 2022 until April 2022, approximately 16 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited May 23, 2022). The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it

---

[1] Defendant indicated its consent to the filing of this amended complaint.

collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

5. Hudson is an individual who resides in the State of Texas.

6. Hudson brings this action on behalf of herself and all others similarly situated.

7. IDIQ is a Nevada limited liability that is headquartered in the State of California. IDIQ has been in good standing to transact business at all times relevant to this Complaint.

8. IDIQ transacts business in California and throughout the United States.

9. This Court has personal jurisdiction over IDIQ because IDIQ is headquartered in the State of California, IDIQ solicits business in the State of California and otherwise has sufficient minimum contacts with the State of California, and such contacts are continuous and systematic.

10. IDIQ markets a product/service under the name "IdentityIQ." The IdentityIQ product/service is marketed as a "smarter solution to identity theft protection and credit report monitoring."

11. Hudson is the owner of a cellular phone. Her phone number associated with the phone is 817-XXX-8035.

12. Hudson used the phone number for personal, residential purposes. Among other uses, Hudson's uses her phone to receive personal phone calls and to return calls to persons who contact her on phone number. Hudson conducts no business from this phone number.

13. Hudson's phone number is held in her own personal name and not in the name of a business.

14. Hudson's phone number is a residential number and she is the subscriber of that number.

15. Hudson did not provide her phone number to be called by IDIQ.

16. Hudson has no prior business relationship with IDIQ.

17. Hudson never inquired of IDIQ about any of IDIQ's products or services before or at the time she received the calls/text messages at issue.

18. Hudson did not grant IDIQ consent to be called on her cell phone.

19. To avoid receiving unwanted telemarketing calls, Hudson registered her phone number on the National Do Not Call Registry on or about October 17, 2009.

20. Hudson received at least eight text messages on her phone from IDIQ.

21. On or about December 23, 2021 Hudson received two text messages on her phone from or on behalf of IDIQ.

22. On or about January 7, 2022, Hudson received two text messages on her phone from or on behalf of IDIQ

23. On or about January 8, 2022, Hudson received three text messages on her phone from or on behalf of IDIQ.

24. On or about January 9, 2022, Hudson received a text message on her phone from or on behalf of IDIQ

25. Each of the text messages Hudson received directed Hudson to a website. Upon clicking the product for purchase identified on the website, Hudson was directed to complete her personal information to create an account for "IdentityIQ" on the website "enroll.identityiq.com."

26. The enroll.identityiq.com website identified IDIQ's products and attempted to sell those products. Among other products, the website offered a "Secure with Bitdefender" product at a price of $69.98.

27. The website enroll.identityiq.com is owned and operated by IDIQ.

28. IDIQ's conduct violated the privacy rights of Hudson and the putative class members, as they were subjected to annoying and harassing calls. IDIQ's calls intruded upon the rights of Hudson and the putative class members to be free from invasion of their interest in seclusion.

29. IDIQ's conduct caused Hudson and the putative class members to waste time addressing and/or otherwise responding to the unwanted text messages.

30. On information and belief, IDIQ sent text messages to Hudson and the putative class members for the purpose of selling its products and services.

## CLASS ALLEGATIONS

31. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Hudson brings this lawsuit as a class action on behalf of herself and all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation.

32. Hudson seeks to represent the following classes:

> **TCPA class:** All persons in the United States who from four years before the date of the filing of the complaint until trial: (1) whose telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) received more than one telemarketing text message from or on behalf of Defendant; (3) within a twelve-month period.

33. Hudson reserves the right to add administrative subclasses, or to amend the definition of the proposed class, during the lawsuit proceedings.

34. The members of the proposed classes are so numerous that joinder of all members is impracticable. Hudson reasonably believes that hundreds or thousands of people have been harmed by IDIQ's actions. The names and phone numbers of the members of the proposed class are readily identifiable through records available to IDIQ or those acting on its behalf.

35. Most members of the proposed class have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

36. On information and belief, IDIQ has called and continues to call people who are registered on the National Do Not Call Registry. It is reasonable to expect that IDIQ will continue to make such calls absent this lawsuit.

37. On information and belief, IDIQ has called and continues to place telemarketing calls without first obtaining a registration certificate from the Office of the Secretary of State. It is reasonable to expect that IDIQ will continue to make such calls absent this lawsuit.

38. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

   a. Whether IDIQ placed calls to Hudson and the putative class members after they were registered on the National Do Not Call Registry more than 31 days;

   b. Whether IDIQ's conduct violates 47 U.S.C. § 227(c);

   c. Whether IDIQ's conduct violates the rules and regulations implementing the TCPA; and,

   d. Whether Hudson and the putative class members are entitled to increased damages for each violation based on the willfulness of IDIQ's conduct.

39. Hudson's claims are typical of the claims of the proposed class members because her claims arise from the same practice that gives rise to the claims of the members of the proposed class and is based on the same legal theories.

40. Hudson and her counsel will fairly and adequately protect the interests of the members of the proposed class. Hudson's interests do not conflict with the interests of the proposed class she seeks to represent. Hudson has retained lawyers who are competent and experienced in class action, TCPA litigation and consumer law.

41. Hudson's counsel will vigorously litigate this case as a class action, and Hudson and her counsel are aware of their responsibilities to the putative members of the class and will discharge those duties.

42. A class action is superior to all individual lawsuits for this controversy. Joinder of all proposed members of the proposed class in one action is impracticable if not impossible and prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

43. In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

44. Questions of law and fact, particularly the propriety of calling phone numbers registered on the National Do Not Call Registry, predominate over questions affecting only individual members.

45. IDIQ has acted or refused to act on grounds that apply generally to the class, making final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

### Count I - Violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*

46. Hudson incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

47. The TCPA defines a "telephone solicitation" as a "call or message for the purpose of encouraging the purchase of goods, or services which is transmitted to any person." 47 U.S.C. § 227(a)(4).

48. The TCPA provides that is a violation of the law for a person whose phone number is registered on the National Do Not Call Registry to receive more than one call on their phone "within any 12-month period by or on behalf of the same entity." *See* 47

U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

49. The penalty for each call placed in violation of the TCPA's restrictions on calling cell phone numbers registered on the National Do Not Call Registry is $500 per call and up to $1,500 per call if the violation is determined to be willful. *See* 47 U.S.C. §§ 227(c)(5).

50. In addition, the TCPA allows the Court to enjoin IDIQ's violations of the TCPA's regulations prohibiting calls to cell phone numbers registered on the National Do Not Call Registry. *See* 47 U.S.C. §§ 227(c)(5)(A).

51. By making calls to the phones of Hudson and the putative class members after their numbers were registered on the National Do Not Call Registry, IDIQ violated the TCPA, including, but not limited to, 47 U.S.C. §§ 227(c)(1) and the TCPA's corresponding regulations.

52. IDIQ knew or should have known that Hudson and the putative class members had their numbers registered on the National Do Not Call Registry.

53. Hudson and the putative class members are entitled to damages of $500.00 per violation for each call made by IDIQ and up to $1,500.00 per violation if the Court finds that IDIQ willfully violated the TCPA.

**Demand for Judgment**

WHEREFORE Plaintiff Kimberly Hudson, individually, and on behalf of all others similarly situated, requests the Court grant the following relief:

a. Enter an order against Defendant IDIQ, LLC pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing Hudson as the class representative;

b. Enter an order appointing Miller Shah LLP and Butsch Roberts & Associates LLC as counsel for the class;

c. Enter judgment in favor of Hudson and the putative class for all damages available under the TCPA, including statutory damages of $500 per violation, or up to $1,500 per violation if IDIQ, LLC willfully violated the TCPA;

d. Enter a judgment in favor of Hudson and the putative class that enjoins IDIQ from violating the TCPA's regulations prohibiting IDIQ from calling numbers registered on the National Do Not Call Registry;

e. Award Hudson and the class all expenses of this action, and requiring IDIQ to pay the costs and expenses of class notice and administration; and,

f. Award Hudson and the class such further and other relief the Court deems just and appropriate.

**DEMAND FOR JURY TRIAL**

Please take notice that Plaintiff Kimberly Hudson demands a jury trial in this case.

Dated: September 15, 2022              Respectfully submitted,

By: /s/ James C. Shah
James C. Shah (SBN 260435)
Kolin C. Tang (SBN 279834)
**MILLER SHAH LLP**
19712 MacArthur Blvd., Suite 222
Irvine, CA 92612
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jcshah@millershah.com
         kctang@millershah.com

**BUTSCH ROBERTS & ASSOCIATES LLC**
Christopher E. Roberts (admitted *pro hac*)
231 S. Bemiston Avenue, Suite 260
Clayton, Missouri 63105
Ph: (314) 863-5700
Fax: (314) 863-5711
Email: CRoberts@butschroberts.com

*Attorneys for Kimberly Hudson*